CHARLES E. DANFORTH and others

v.

THE PHILADELPHIA AND CAPE MAY SHORT LINE RAILWAY
COMPANY.

1. Specific performance was refused of a contract to build and equip a railroad, although the contract price was to be paid in the stock and bonds of the company, and the estimates, &c., were to be made by the company. The company declared its inability to comply with the requirements of a supplement to the act (a general law) under which it was incorporated, and the penalty for non-compliance therewith was, by the supplement, declared to be the forfeiture of its charter. It therefore, and merely for that reason, declined to proceed further under the contract.

2. The court refused to consider the constitutionality of such supplement, so far as the defendants were concerned, and also refused to direct them to make estimates for the work already done under the contract.

Bill for specific performance. On final hearing on bill and answer.

*Mr. J. W. Griggs*, for complainants. ·

*Mr. W. A. House*, for defendants.

NOTE.—Specific performance will not be decreed of a contract requiring the direct superintendence of the court, nor where the contract or duties to be performed are continuous. The following cases are examples of the application of this rule:

Erecting a structure, or rebuilding or repairing. (*Beck* v. *Allison*, 56 *N. Y.* 366, reversing *S. C.*, 4 *Daly* 422, where all of the early cases are referred to; *Wilkinson* v. *Clements*, *L. R.* (8 *Ch.*) 96 ; *Brace* v. *Wehnert*, 25 *Beav.* 348 ; *Mastin* v. *Halley*, 61 *Mo.* 196 ; *Justices* v. *Croft*, 18 *Ga.* 473; *Birchett* v. *Bollino*, 5 *Munf.* 442 ; *Raynor* v. *Stone*, 2 *Eden Ch.* 128 ; *Reed* v. *Vidal*, 5 *Rich. Eq.* 289 ; *Hall* v. *Boyd*, 14 *Ga.* 1 ; *Denniston* v. *Coquillard*, 5 *McLean* 253. See *Whitworth* v. *Harris*, 40 *Miss.* 483 ; *Tildesley* v. *Clarkson*, 30 *Beav.* 419 ; *Rindge* v. *Baker*, 57 *N. Y.* 209 ; *Wilson* v. *Northampton R. R. Co.*, *L. R.* (9 *Ch.*) 279 ; *Printup* v. *Mitchell*, 17 *Ga.* 558 ; *Wells* v. *Maxwell*, 32 *Beav.* 408 ; *Gray* v. *Hawkins*, 8 *Ohio St.* 449.)

Danforth *v.* Philadelphia & Cape May Short Line Railway Co.

THE CHANCELLOR.

The bill is filed to obtain a decree for specific performance, by the defendants, of a contract entered into between the complainants, partners in business, and them, on the 19th of December, 1877, by which the former agreed to construct, equip and finish, for the latter, a single-track, narrow-gauge railroad, and telegraph line in connection therewith, from the terminus of the Camden, Gloucester & Mount Ephraim Railway to high-water mark in the city of Cape May, with stations, engine and freight-houses, machine and repair-shops, turn-tables, water-stations, &c., &c., and all necessary terminal facilities, for $2,000,000, payable in the capital stock and first mortgage bonds of the company.

By the contract, the complainants were to complete the work within five months after the bonds were negotiated and sold at a price not less than ninety cents on a dollar of the par value thereof; and it was stipulated that they should not be sold at less than that price without the consent of both parties.

The bill states that the complainants entered on the work, and proceeded with it from the date of the contract to the 20th of February following; that there was, at the latter date, due to them, under the contract, the sum of $40,000, or thereabouts; that they were then entitled to have an estimate made, but the defendants refused to make it, or to pay them, or to carry out the contract, which the complain-

---

A party was compelled to put another story on a market-house, after the deed therefor had been delivered to him on that condition. (*Providence* v. *St. John,* 2 *R. I.* 46. See *Price* v. *Penzance,* 4 *Hare* 506.)

A landlord was decreed to repair, in a case where the tenant would otherwise have been irretrievably injured. (*Valloton* v. *Seignett,* 2 *Abb. Pr.* 121.)

Performance was decreed of a covenant not to erect a building within a specified distance. (*Lloyd* v. *London, &c. R. R.,* 2 *DeG. J. & S.* 568. See *St. Louis R. R. Co.* v. *Mathers,* 71 *Ill.* 592.)

Although a contract may be carried out to construct approaches to a railroad track (*Stover* v. *Gt. Western R. R. Co.,* 6 *Jur.* 1009 ; *Wilson* v. *Furness R. R. Co., L. R.* (9 *Eq.*) 28 ; *Sanderson* v. *Cockermouth R. R.,* 11 *Beav.* 497 ; *Raphael* v. *Thames Valley R. R., L. R.* (2 *Eq.*) 37, reversed, *L. R.* (2 *Ch.*) 147 ; see *McCue* v. *Ralston,* 9 *Gratt.* 430) ; or a drain thereunder

ants allege would be of great value to them if performed; and, further, that the defendants cannot respond in damages for their refusal to carry out the agreement; and that the complainants could profitably dispose of the bonds and stock stipulated for as payment. The bill prays that the defendants may be decreed to specifically perform the contract generally, and, also, that they may be required to make the estimate before mentioned, and deliver bonds and stock to the complainants for the amount which may be found due them thereon.

The defendants' answer admits the contract and declares their willingness to perform it, but alleges their inability to do so by reason of the provisions of an act of the legislature of this state (a supplement to the general railroad law), approved on the 19th of February, 1878. By one of those provisions the provision of the original act requiring that the articles of association should not be filed until at least $2,000 of stock for every mile of the proposed railroad should have been subscribed and ten per cent. paid thereon, was altered so as to require that the entire amount of $2,000 per mile shall be paid to the treasurer of this state, to be repaid by him to the directors or treasurer of the company in the manner specified in the supplement, as the work of constructing the railroad shall progress. By the other, the provision of the original act which authorized the mortgaging of the road, &c., of the company, to secure

(*Powell* v. *Gt. Western R. R.*, 1 *Jur.* (*N. S.*) 773) ; or a siding (*Lytton* v *Gt. Northern R. R.*, 2 *K. & J.* 394; *Green* v. *West Cheshire R. R.*, *L. R.* (13 *Eq.*) 44 ; *Windham Cotton Co.* v. *Hartford R. R. Co.*, 23 *Conn.* 373) ; yet the court will not build a railroad (see cases *infra* p. 15) ; nor enforce a contract to locate it in a particular place (*Linder* v. *Carpenter*, 62 *Ill.* 309; *Bestor* v. *Wathen*, 60 *Ill.* 138 ; *Marsh* v. *Fairbury R. R.*, 64 *Ill.* 414 ; see *Borders* v. *Murphy*, 68 *Ill.* 81) ; or a depot (*Haisten* v. *Savannah R. R.*, 51 *Ga.* 199 ; *St. Louis R. R. Co.* v. *Mathers*, 71 *Ill.* 592 ; *Aiken* v. *A. V. & C. R. R.*, 26 *Barb.* 289 ; *Hubbard* v. *K. P. & St. Jo. R. R.*, 63 *Mo.* 68) ; nor operate a railroad (*Powell* v. *Taff R. R. Co.*, *L. R.* (9 *Ch. Ap.*) 331 ; *McCann* v. *Nashville R. R. Co.*, 2 *Tenn. Ch.* 773 ; *Blanchard* v. *Detroit R. R. Co.*, 31 *Mich.* 43 ; *Atlanta R. R. Co.* v. *Speer*, 32 *Ga.* 550 ; *Johnson* v. *Shrewsbury R. R. Co.*, 3 *DeG. M. & G.* 914 ; *Blackett* v. *Bates*, *L. R.* (1 *Ch. Ap.*) 117 ; *Port Clinton R. R. Co.* v. *Cleveland R. R. Co.*, 13 *Ohio St.* 544 ; see *Hood* v.

---

Danforth v. Philadelphia & Cape May Short Line Railway Co.

---

the payment of their bonds to an amount not exceeding the amount of the paid-up capital stock, was altered by adding a provision that if any person or persons shall issue such bonds to any greater amount than the amount which at the time of such issue shall have been actually paid up on the capital stock of the company, he, she or they shall be guilty of a misdemeanor, and, on conviction, be punished by fine of not more than $5,000 or imprisonment at hard labor for not more than three years, or both, at the discretion of the court. These provisions of the supplement were therein expressly made applicable to corporations already organized under the original act. The defendants state that they have expended all the money received by them on account of their capital stock in the work on the road, and that they are not able to comply with the provisions of the supplement, and that, by the terms of the supplement, their charter is forfeited, by reason of their failure to comply with the provisions of that act.

There are several considerations which forbid the granting of the relief prayed for in this suit. If this court would undertake the performance of such a contract as that stated in the bill, a contract for building and equipping a long line of railroad, building station, freight and engine-houses, &c., &c. (and the current and great weight of authority is decidedly against it, *Story's Eq. Jur.*, § 726; *Ross* v. *Union Pacific R. R. Co.*, 1 *Wooolw.* 26; *Fallon* v.

---

*North Eastern R. R., L. R.* (8 *Eq. Cas.*) 666, (5 *Ch. Ap.*) 525; *Del. Lack. & W. R. R.* v. *Erie R. R.*, 6 *C. E. Gr.* 298; *Shacklen* v. *Eastern R. R.*, 98 *Mass.* 93; *Rigby* v. *Gt. Western R. R.*, 2 *Phil.* 44; *Niagara Bridge Co.* v. *Gt. Western R. R.*, 29 *Barb.* 213); nor, repair cattle-guards (*Columbus R. R. Co.* v. *Watson*, 26 *Ind.* 50); nor compel a railroad to ship all of its grain through a certain elevator (*Richmond* v. *Dubuque R. R.*, 33 *Iowa* 422; see *Chicago R. R.* v. *C. & V. R. R.*, 79 *Ill.* 121; *Lynn* v. *Mt. Savage Iron Co.*, 34 *Md.* 603); nor, carry on a colliery (*Fothergill* v. *Rowland, L. R.* (17 *Eq.*) 132; *Wheatley* v. *Westminster Coal Co., L. R.* (9 *Eq.*) 538); or, a quarry (*Marble Co.* v. *Ripley*, 10 *Wall.* 339; *Booth* v. *Pollard*, 4 *Y. & C.* 61; see *Pollard* v. *Clayton*, 1 *K. & J.* 462; *Rider* v. *Gray*, 10 *Md.* 282); or, a newspaper (*Tinkler* v. *Hindmarsh*, 2 *Beav.* 350); or, compel a man to keep open an inn (*Hooper* v. *Broderick*, 11 *Sim.* 47); or, to cultivate a crop in a particular way (*Starnes* v. *Newson*, 1 *Tenn. Ch.* 239).—REP.

*Railroad Co.*, 1 *Dillon* 121; *South Wales Railw. Co.* v. *Wythes*, 5 *DeG. M. & G.* 880), the disability of the defendants would be a sufficient reason for refusing. Courts of equity will never undertake to enforce specific performance of an agreement where the decree would be a vain or imperfect act. *Tobey* v. *The County of Bristol*, 2 *Story* 800. And the incapacity of the defendant to carry the contract into execution affords a ground of defence in a suit for specific performance. *Fry on Spec. Perf.* § 658.

In this case the defendants are willing to perform their part of the contract if they can lawfully do so. They have never refused to issue their bonds and stock to the complainants in accordance with the terms of the contract, except because of the provisions of the supplement above referred to, under which they apprehend they may have lost their corporate existence, and by which, if their corporate existence be not lost, their directors and officers who should act in the matter would be liable to severe and ignominious punishment for so doing (*P. L.* 1878, p. 23). They have not complied with the provisions of the supplement in reference to the amount to be paid in on their capital stock, and have not been able and are not able to do so. Only ten per cent. of the amount of their capital stock has been paid in. Their corporate powers are, according to the supplement, extinct, and the corporation is dissolved (*P. L.* 1878, p. 22). The complainants, however, insist that the supplement is an unconstitutional law; that it destroys their contract, which existed when it was passed, and which was founded on the faith of the original act; that it deprives them of their vested rights thereunder, and that it should be declared to be unconstitutional, and its provisions, so far as they are subject to that objection, disregarded. But it is in nowise necessary to consider that question; for, if there were no other valid objection, this court would not, under the circumstances of the case, declare that the apprehensions, or doubts at least, of the defendants, as to the validity of the supplement, are wholly groundless, and

direct them to proceed, notwithstanding the penalties above mentioned, to issue bonds according to the contract and in violation of the prohibition of the supplement; to subject themselves to indictment for misdemeanor and the consequences of conviction. It is enough that the legislature has forbidden them to issue the bonds to induce this court to refuse to order them to issue them. But, further, there is at least doubt whether the company still has a corporate existence.

Though the court might, if the case were free from these difficulties, direct the defendants to make the estimate of work already done prayed for in the bill, (*Waring* v. *Manchester, &c. Railw. Co.*, 7 *Hare* 482,) yet, for the considerations already presented, that relief must also be denied.

The bill will be dismissed.